IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 1:18CR303-3 |
| | : | |
| SALVADOR VALADEZ, JR. | : | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

NOW COMES the United States of America, by and through Matthew G.T. Martin, United States Attorney for the Middle District of North Carolina, and responds in opposition to the motion of Defendant Salvador Valadez, Jr., ("Valadez") to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (compassionate release) (Docket Entry ["Dkt."] #839).

The COVID-19 pandemic presents the judicial system with unprecedented issues related to the prosecution and punishment of crime, including the just treatment of prisoners facing health risks while in confinement. The government is concerned for the health and well-being of all inmates in federal custody, but is also required to uphold the law and protect the public. Congress and the executive branch, including the Federal Bureau of Prisons (BOP), have responded to the crisis posed by the COVID-19 pandemic by passing legislation and enacting guidance to address issues related to home

confinement and compassionate release for prisoners with underlying health conditions who are at greater risk for severe negative health outcomes if infected by the COVID-19 virus, in some cases expanding or building upon existing statutory frameworks.

## Summary

On December 30, 2020, Valadez moved the Court for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Dkt. #35). In support of his motion, Valadez states that he suffers from asthma and argues that this circumstance is an extraordinary and compelling reason for his release. (*Id*. at 1).

On December 23, 2020, the CDC, on the basis of extensive available data, once again revised its list of high-risk factors for serious complications from the COVID-19 virus. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 18, 2021). The CDC reports a list of conditions that certainly present a risk, with a longer separate list for which there is insufficient data to conclude anything other than that these conditions "might" put a person at risk. The CDC has determined that individuals suffering from moderate to severe asthma "may" be at an increased risk of severe illness from COVID-19. *Id*.

Notwithstanding this potential risk, Congress requires that Valadez seek compassionate release by first requesting a reduction in sentence ("RIS") from

2

the BOP, through the warden of his prison, and then either waiting 30 days for the BOP to respond, or exhausting all administrative rights to appeal, whichever comes first, before moving the district court for a modification or reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). Valadez submitted such a request to the warden at the facility where he is being held, but that request was denied on July 17, 2020.

## **Prior Proceedings**

Pursuant to a guilty plea, Valadez was convicted of conspiracy to distribute methamphetamine, in violation of 21 U.S.C. § 841(b)(1)(A), as well as conspiracy to commit money laundering. (Dkt. #668; Dkt. Entry dated 7/10/19). On July 9, 2019, the district court sentenced Valadez to 192 months of imprisonment, followed by five years of supervised release. (Dkt. Entry dated 7/10/19; Dkt. #668).

According to the Presentence Investigation Report ("PSR"), in 2014, the Rowan County Sheriff's Office (RCSO), Salisbury, NC, and the North Carolina State Bureau of Investigation (SBI) initiated an investigation into large scale methamphetamine distribution. Since the inception of the investigation, 60 individuals have been indicted, and the vast majority of them, including Valadez, entered pleas of guilty to various narcotics, firearms, and/or money laundering offenses. The criminal activity undertaken on behalf of the organization was not limited to North Carolina, but extended into Washington,

California, and Georgia. (PSR at ¶ 23).

Valadez held a supervisory role in his group, and coordinated the delivery of methamphetamine shipments to Rowan County, NC, from Steven Recendez, a Sinaloa Cartel member. He also recruited multiple individuals, including his girlfriend and girlfriend's father, to conduct wire transfers to Steven Recendez or his designees as payment for the methamphetamine shipments. Many of the wire transfers were sent to individuals in Mexico with ties to the Sinaloa Cartel. (PSR at ¶ 30).

On August 9, 2018, agents executed an arrest warrant at Valadez's residence, 1012 Matika Drive, Salisbury. The search produced one small plastic baggie that contained one gram of methamphetamine inside a safe in the master bedroom. Valadez waived his *Miranda* rights and gave a statement to investigators. He discussed a large shipment of controlled substances that was seized in Lexington, Kentucky, by law enforcement. The shipment, which included 40 pounds of methamphetamine and 80 kilograms of cocaine hydrochloride, was flown on a private aircraft from California to Kentucky. He made further statements as well. (PSR ¶ 60). Valadez was responsible for 7.26 kilograms of methamphetamine and 56.7 grams of heroin. (PSR at ¶ 87).

Valadez is currently in BOP custody at USP Lompoc, located in Lompoc, California. *See* Fed. Bureau of Prisons, *Inmate Locator* https://www.bop.gov/inmateloc/ (last visited January 18, 2021). Valadez is

4

scheduled for release, including credit for good conduct time, on March 28, 2032. *Id.*

## Discussion

There are two avenues by which a federal inmate in Valadez's position could potentially be granted release from prison in the context of COVID-19 pandemic risk: (1) "home confinement" pursuant to 18 U.S.C. § 3624(c)(2), as expanded by the Attorney General's authority under the "Coronavirus Aid, Relief, and Economic Security Act" (CARES Act); and (2) "compassionate release" by means of a sentencing reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), based upon "extraordinary and compelling reasons." The first approach is inherently administrative in nature, dealing with statutes that govern how the BOP determines the place at which a federal prisoner actually serves his term of imprisonment. The second approach involves a judicial modification of an inmate's term of imprisonment, authorized by statute under certain circumstances and following particular administrative and judicial procedures.

### A. Home Confinement Under the BOP Priority Program

Section 12003(b)(2) of the CARES Act authorizes home confinement during the covered emergency period. The Attorney General may invoke this authority when "emergency conditions will materially affect the functioning of the Bureau [of Prisons]"; the "Director of the Bureau may lengthen the

5

maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate." CARES Act (H.R. 748), Pub. L. No. 116-136 (March 27, 2020).

On March 26, 2020, the Attorney General issued a memorandum to the Director of the BOP asking the BOP to prioritize the use of home confinement under then-existing law, in response to the ongoing COVID-19 pandemic and providing a non-exhaustive list of discretionary factors to be considered in that process. Attorney General William P. Barr, Memorandum for Director of Bureau of Prisons: Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic (March 26, 2020) [hereinafter the "March 26 Memo"].

On April 3, 2020, the Attorney General issued another memorandum to the Director of the BOP which referenced the earlier March 26 Memo and the steps already taken by the BOP to utilize home confinement "under the pre-CARES Act standards." Attorney General William P. Barr, Memorandum for Director of Bureau of Prisons: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (April 3, 2020) [hereinafter the "April 3 Memo"]. The Attorney General then identified three federal correctional institutions with "significant levels of infection" and directed the BOP to "immediately review all inmates who have COVID-19 risk factors, as

established by the CDC, starting with inmates incarcerated at FCI Oakdale, FCI Danbury, and FCI Elkton, and similarly situated facilities, where you determine that COVID-19 is materially affecting operations." (*Id.*). Attorney General Barr explained in the April 3 Memo that he was exercising his authority under the CARES Act to "expand the cohort of inmates who can be considered for home release" and directing the BOP to "give priority in implementing these new standards to the most vulnerable inmates at the most affected facilities" consistent with the guidance in the April 3 Memo and taking into consideration the factors identified in the March 26 Memo. (*Id.*). Accordingly, if the BOP determines that an inmate is suitable under the guidance for home detention, then the BOP is "directed to immediately process [the inmate] for transfer and then immediately transfer [the inmate] following a 14-day quarantine at an appropriate BOP facility[.]" (*Id.*).

Following the filing of Valadez' motion for compassionate release, the government consulted legal staff at the FCC Butner Legal Center, which coordinates legal inquiries concerning defendants convicted in this district. Attorney Holly Pratesi informed the undersigned that Valadez is ineligible for consideration for home confinement due to his classification as a high recidivism risk, medium security classification, and the fact that he has served only 15 percent of his sentence. As this Court has recognized on numerous occasions, any decision to grant or deny home confinement lies exclusively

within the discretion of the Attorney General. *See United States v. Gray*, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020).

### B. Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)(i)

Under the compassionate release provisions of 18 U.S.C. § 3582(c)(1)(A)(i), the district court may modify or reduce an inmate's sentence "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). If this condition is met and the motion is properly before the district court, the court may also find, after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable, that "extraordinary and compelling reasons warrant a reduction" of the defendant's sentence and that "such reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" (*Id.*). The findings required for release include that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2), p.s. (2018).

The government acknowledges that COVID-19 may affect whether an inmate can show an "extraordinary and compelling reason" warranting compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), to the extent that:

8

(1) the inmate has a condition or characteristic that is a cognizable basis for compassionate release under the current criteria (e.g., a serious medical condition, debilitating condition, elderly offender with medical conditions, etc.) and that condition or characteristic also elevates the inmate's risk of becoming seriously ill from COVID-19 under CDC guidelines, and (2) the inmate is more likely to contract COVID-19 in his particular institution than if released.

Here, the record reflects that Valadez has satisfied the exhaustion requirement of the compassionate release statute. He submitted a request to the warden, and that request was denied on July 17, 2020.

Having established his motion is properly before the Court, Valadez bears the burden of establishing that extraordinary and compelling reasons justify his release. *See United States v. Mangarella*, 2020 WL 1291835, at *2 (W.D.N.C. Mar. 16, 2020); *United States v. Stowe*, 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019); *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) (the defendant has the burden to show circumstances meeting the test for compassionate release). To state a cognizable basis for compassionate release, a defendant must establish that his basis falls within one of the categories listed in the policy statement or is otherwise appropriate for consideration by the Court. *See, e.g., United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020).

9

Here, Valadez argues his history of asthma constitutes an extraordinary and compelling reason for compassionate release. As noted above, moderate or severe asthma is recognized by the CDC as a risk factor for severe illness from COVID-19. Valadez asserts generally that he has "asthma and other issues" without any characterization of the severity of his asthma-related symptoms. (Dkt. #35, p. 1). This does not satisfy his burden to demonstrate an extraordinary and compelling basis for his release.

Even assuming, *arguendo*, that Valadez's asthma is "moderate or severe," his release would not be justified in light of the § 3553 factors present in this case. Valadez was a supervisor in an organization with ties to a Mexican drug cartel that was responsible for the distribution of significant quantities of controlled substances. Moreover, Valadez directly assisted in laundering the proceeds from this illegal activity. From the record, it is apparent that Valadez's lengthy sentence was necessary to provide effective deterrence and to protect the public. Given these facts and circumstances, Valadez has failed to establish any basis for the Court to grant his compassionate release.

CONCLUSION

WHEREFORE, as set forth herein, the government requests that the Court deny Valadez's motion for compassionate release.

This, the 19th day of January, 2021.

                                      Respectfully submitted,

                                      MATTHEW G.T. MARTIN
                                      United States Attorney


                                      /S/ TERRY M. MEINECKE
                                      Assistant United States Attorney
                                      NCSB #27586
                                      United States Attorney's Office
                                      Middle District of North Carolina
                                      101 S. Edgeworth St., 4th Floor
                                      Greensboro, NC  27401
                                      Phone:   336/333-5351

CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2021, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, and that notice will be mailed to the following non-CM/ECF user:

SALVADOR VALADEZ, JR.
REG. #34486-057
USP LOMPOC
U.S. PENITENTIARY
3901 KLEIN BLVD
LOMPOC, CA  93436

/S/ TERRY M. MEINECKE
Assistant United States Attorney
NCSB #27586
United States Attorney's Office
Middle District of North Carolina
101 S. Edgeworth St., 4th Floor
Greensboro, NC  27401
Phone:  336/333-5351